<p style="text-align:center;color:red;">CORRECTED COPY</p>

# In the United States Court of Federal Claims

No. 18-903T
(Filed November 27, 2019)

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
                                            *
                                            *
SHIRLEY JEAN OYER,                          *
                                            *
                    Plaintiff,              *
                                            *
       v.                                   *
                                            *
THE UNITED STATES,                          *
                                            *
                    Defendant.              *
                                            *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

## MEMORANDUM OPINION AND ORDER

Plaintiff, Shirley Jean Oyer,[1] asserts that the United States government has unlawfully taken her property interest in her name and also asserts what she calls an "International Commercial Claim" against the United States in the amount of $727,100,141.64. Am. Compl.[2] The government has moved to dismiss this case under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). *See* United States' Mot. to Dismiss at 1 (Def.'s Mot.); *see also* United States' Renewed Mot. to Dismiss at 1 n.1 (Renewed Mot.) (adding that "the

---

[1] Plaintiff strangely believes that when her name is rendered in all capitals, this somehow denotes a separate and fictitious person. *See* Am. Compl. at 3–6. As a general matter, but especially in the context of the filings of this court, plaintiff should take note that an all-capitalized version of her name refers to no person or entity other than Shirley Jean Oyer.

[2] The original Complaint made other claims which plaintiff failed to raise in the Amended Complaint---namely, that our Court should void a district court judgment, order the return of her property, and remove and release notices and tax liens. *See* United States' Renewed Motion to Dismiss at 2 n.2. As these claims were dropped, they no longer merit review. As Ms. Oyer explained, the "amended petition did not refer to or adopt the original petition, it was complete in itself." Answer to Resp.'s Mot. to Dismiss (Pl.'s Resp.) at 3.

Court could also dismiss plaintiff's claim as to her International Commercial Claim and claim as to her status as a taxpayer for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6)"). Because plaintiff has failed to state a claim for relief that falls within this court's jurisdiction and because plaintiff fails to state a claim upon which relief can be granted, the government's motion to dismiss this case under Rules 12(b)(1) and 12(b)(6) must be **GRANTED**.

## I. BACKGROUND

Plaintiff's Amended Complaint advances two claims, one concerning an implied contract that she alleges gives rise to an "International Commercial Claim" and another concerning the government's alleged misuse of her property interest in her name. Her first claim arises from a document she refers to as an implied contract which she submitted to the Internal Revenue Service (IRS), containing forty-two statements to which the IRS was purportedly bound if no reply were received within ten days. Am. Compl. at 2–6; *see* also Ex. 1 to Compl. (Ex. 1) at 2, 5–9. Styling herself as "Libelant," Ms. Oyer notified the government that it "may agree to all statements and claims by Libelant by simply remaining silent." Am. Compl. at 6; Ex. 1 at 5. Convinced that she now has a valid contract with the United States due to the government's disregard of the document, plaintiff demands $727,100,141.64 as part of her "Accounting and True Bill" stemming from her so-called "International Commercial Claim Within Admiralty Administrative Remedy." Am. Compl. at 21–22. She also cites—but fails to explain the relevance of—28 U.S.C. §§ 1333, 2461, and 2463, which all involve fines, penalties, and forfeitures, particularly in the context of maritime law. Am. Compl. at 1.

Plaintiff's second claim is based on the curious theory that a fictitious version of her name was established when the government began referring to her in all capital letters. In short, she alleges that the government's use of her name in all capital letters created a counterfeit identity by representing that she is a United States citizen (a description she seemingly denies), taking away her "political status as an American woman with all rights and immunities" and turning her into a "creation of government, a fictitious entity, a dead person, or a nom de guerre." Am. Compl. at 9. This began, she argues, when she was born in Missouri because her parents were allegedly tricked into filing her birth certificate with the state, an act that plaintiff thinks turned her into state property as a citizen referred to in all capital letters. Am. Compl. at 7–10. She asserts that her identity was taken and must be returned under 31 U.S.C. § 1304 and 42 U.S.C. § 1983. Am. Compl. at 1–2.

The present dispute arose over the attempts of the IRS to sell plaintiff's property to collect taxes. Plaintiff denies owing such taxes on the belief that "[t]he government stole [her] name ([her] property) at birth. And, the Internal Revenue Service through its agents were putting a 'direct tax' on [her] labor ([her] property)." Am. Compl. at 10. Plaintiff admits that sometime around 1995, she stopped filing her 1040 form to avoid taxes that she claims she never owed. *See* Am. Compl. at 11.

Yet she complains that the IRS seized money from her life insurance policy in 2006 and executed tax liens on land belonging to her. *Id.* at 11–12. Thinking she has found a novel legal loophole, Ms. Oyer argues that she does not "owe any tax directly to the United States of America" and that the government's collection action "was brought against SHIRLEY J. OYER, the fictitious entity created by the government. However, the UNITED STATES OF AMERICA was after Shirley Jean Oyer's land." *Id.* at 12.

In its Renewed Motion to Dismiss, the government maintained that this court lacks jurisdiction to hear the case under RCFC 12(b)(1) and, alternatively, that the matter could be dismissed under RCFC 12(b)(6). Renewed Mot. at 1 & n.1. Defendant points out that other courts have already dismissed similar "International Commercial Claims" as frivolous and meritless, *id.* at 2–3, as well as claims like the plaintiff's concerning "all the monetary enrichment that the government has enjoyed" from use of her name, *id.* at 3–4 (quoting Am. Compl. at 21).

In response, Ms. Oyer states that her cause of action arises under the First Amendment right to "petition the government for a redress of grievances." Answer to Resp.'s Mot. to Dismiss (Pl.'s Resp.) at 1. She also claims that the court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), and further contends that jurisdiction may be exercised under the Civil Rights Act, 42 U.S.C. § 1983. Pl.'s Resp. at 2. Plaintiff argues that her case is factually distinguishable from the decisions of other courts which rejected similar "International Commercial Claims." *Id.* at 4–5. She also cites a proposed statute of New Hampshire which aimed to address "silent deception and inducement to fraud" on the part of state employees concerning the need for commercial registration of personal vehicles. *Id.* at 5. Plaintiff briefly adds that, when she was indicted for her involvement in a tax evasion scheme, her "6th amendment right to face [her] accuser was violated." *Id.* She also maintains that she is the victim of fraud, as the IRS has been seizing her entire social security check, which is a remedy she believes is reserved for federal government vendors. *Id.* at 6. *Id.* Plaintiff explains that an order concerning the government's wrongful use of her name would accomplish the return of her property to her. *Id.* at 7.

The government's reply reiterates its earlier arguments but with new color. Defendant notes that the Tucker Act, cited by Ms. Oyer, does grant our court jurisdiction over implied contract claims, but this jurisdiction depends on the establishment of "non-frivolous allegations of the existence of an implied-in-fact contract." United States' Reply in Supp. Mot. to Dismiss (Def.'s Reply) at 2. The government argues that the "International Commercial Claim" is inherently frivolous, precluding our court's jurisdiction under RCFC 12(b)(1) and warranting dismissal under RCFC12(b)(6). *Id.* at 3–4. Moreover, plaintiff's failure to allege any facts supporting the special sort of relationship or circumstance that might give rise to an implied contract due to a party's silence is fatal to her claim, the

government maintains. *Id.* at 4–5 (discussing *Radioptics, Inc. v. United States*, 223 Ct. Cl. 594, 609–10 (1980)). Indeed, the government notes that Ms. Oyer has failed to adequately plead any of the elements of an implied contract. *Id.* (citing *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990).[3] Concerning plaintiff's remaining claims, *see* Def.'s Reply at 6–7, defendant notes that our court lacks jurisdiction over Civil Rights Act claims, *Hover v. United States*, 113 Fed. Cl. 295, 296 (2013); First Amendment claims, *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983); and requests for declaratory relief that do not relate to valid claims for monetary relief, *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (1998).

## II. DISCUSSION

### A. Standard of Review

Under RCFC 12(b)(1), this court must dismiss claims that do not fall within its subject-matter jurisdiction. When considering a motion to dismiss a case for lack of subject-matter jurisdiction, courts will accept as true all factual allegations the non-movant made and draw all reasonable inferences in the light most favorable to that party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), abrogated on other grounds by *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Pixton v. B & B Plastics, Inc.*, 291 F.3d at 1326 (stating that on a motion to dismiss for lack of subject-matter jurisdiction this court views "the alleged facts in the complaint as true, and if the facts reveal any reasonable basis upon which the non-movant may prevail, dismissal is inappropriate"); *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 325 (2012).

While a *pro se* plaintiff's filings are to be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), this lenient standard cannot spare from dismissal claims which fall outside this court's jurisdiction. *See, e.g., Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). It is incumbent on the plaintiff to properly invoke the court's jurisdiction by establishing either a breach of contract by the federal government or identifying a money-mandating law which was allegedly violated by the government. *See United States v. Mitchell*, 463 U.S. 206, 215–17 (1983). A plaintiff's *pro se* status does not relieve her of the obligation to demonstrate jurisdiction by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) (explaining the plaintiff's responsibility for showing that the claim falls within the court's jurisdiction); *Henke*, 60 F.3d at 799 (noting that a plaintiff's status does not excuse defects in the

---

[3] The four necessary elements are: (1) "mutuality of intent to contract"; (2) "consideration"; (3) "lack of ambiguity in offer and acceptance"; and (4) that "the Government representative 'whose conduct is relied upon [had] actual authority to bind the government in contract.'" *City of El Centro*, 922 F.2d at 820.

complaint); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (stating that the burden of proof for establishing jurisdiction is by a preponderance of the evidence).

Even if the plaintiff asserts claims that fall within the court's jurisdiction, she must still present a valid claim on which the court can grant relief. *See* RCFC 12(b)(6). "When considering a motion to dismiss a case for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court accepts all well-pled facts as true and draws all reasonable inferences in plaintiff's favor." *Silver Buckle Mines, Inc. v. United States*, 117 Fed. Cl. 786, 791 (2014) (citing *Scheuer*, 416 U.S. at 236; *Pixton*, 291 F.3d at 1326; *Englewood Terrace Ltd. P'ship v. United States*, 61 Fed. Cl. 583, 584 (2004)). Granting a motion to dismiss a case for failure to state a claim "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). Denial of the motion is warranted when the complaint presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## B. Analysis

### 1. The "International Commercial Claim"

Plaintiff styles her primary claim as seeking judgment on an "International Commercial Claim Within the Admiralty Administrative Remedy." Am. Compl. at 1. As explained below, this claim must be dismissed under RCFC 12(b)(1) for lack of subject-matter jurisdiction. Even if the claim were to be considered as falling within our jurisdiction, it would still be dismissed under RCFC 12(b)(6) due to Ms. Oyer's failure to state a claim upon which relief can be granted. This claim is based on a document, Exhibit 1 to her initial complaint, which she apparently sent to IRS officials in May 2005. *See* Compl. at 23–33 (Ex. 1). In it, Ms. Oyer asserts, among other things, that she is not subject to federal tax laws, that the IRS has committed tortious and criminal acts against her, and that the government's failure to respond within 10 days results in her allegations being conceded and establishes her entitlement to the itemized damages demanded. *Id.* Under plaintiff's theory, the government's disregard of her unilateral demands has somehow resulted in a contract, thereby laundering her criminal and tort actions into matters coming within our jurisdiction over implied-in-fact contracts. *See id.* at 23, 31–32; Pl.'s Resp. at 1–2.[4]

---

[4] The Court notes that Ms. Oyer notified the government of its alleged default under the purported agreement on June 27, 2005, *see* Compl. at 46–49. Thus, even if a contract did exist with the government, its breach would have occurred nearly thirteen years prior to the filing of Ms. Oyer's case, placing the matter outside of our

This sort of contrivance is a staple of the "sovereign citizen movement," consisting of individuals who insist that each citizen is a sovereign entity whose relationship to the United States is one between sovereign equals and not between a citizen and her representative government. *See Cooper v. United States*, 104 Fed. Cl. 306, 313–14 (2012). Commonly, such plaintiffs raise unusual arguments that they believe create implied contractual relationships with the United States government, such as Ms. Oyer's "International Commercial Claim." *See Gravatt v. United States*, 100 Fed. Cl. 279, 282–87 (2011) (finding in a sovereign citizen case that plaintiff failed to provide a non-frivolous allegation of an implied contract sufficient to establish jurisdiction).

Our court has jurisdiction over implied contract claims when their allegations are not frivolous. The Tucker Act provides this court with jurisdiction over "any claim against the United States founded upon . . . any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), but it is well-known that such jurisdiction must be coupled with a "substantive right enforceable against the United States for money damages." *Perri v. United States*, 340 F.3d 1337, 1340 (Fed. Cir. 2003) (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)). To establish jurisdiction, then, plaintiff must present a "non-frivolous allegation" that an enforceable implied-in-fact contract exists. *Gardner v. United States*, 439 Fed. App'x 879, 881 (Fed. Cir. 2011) (citing *Hanlin v. United States*, 214 F.3d 1319, 1321 (Fed. Cir. 2000)). As defendant correctly notes, "International Commercial Claims" of this sort have been addressed in other jurisdictions and rejected as meritless and frivolous. *Knights v. Legere*, No. 16-CV-6965, 2017 WL 464377, at *2 (E.D.N.Y. Feb. 3, 2017); *Brown v. McQuaid*, No. 6-CV-551, 2007 WL 1425497, at *1–2 (D. Del. May 9, 2007); *Hibben v. Countrywide Home Loans, Inc.*, No. 5-C-4262, 2005 WL 3262971 (N.D. Ill. Nov. 29, 2005); *Lindberg v. C.I.R.*, 99 T.C.M. (CCH) 1273, 2010 WL 133043, at *8 (T.C. Apr. 6, 2010) (recounting that taxpayer "sent a letter to the IRS in which he purported to subject the IRS to a nonsensical 'International Commercial Claim Administrative Remedy.'"). Such claims are based on a fictitious doctrine that seems to have no recognized place in our legal system, let alone the jurisdiction of this court, and must be dismissed under RCFC 12(b)(1).

Even if plaintiff's "International Commercial Claim" were non-frivolous, it would still fail to meet the requirements of an implied-in-fact contract, and thus be dismissed under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. We have maintained the view of our predecessor court that "[s]ilence may not be construed as an acceptance of an offer in the absence of special circumstances existing prior to the submission of the offer which would reasonably lead the offeror to conclude otherwise." *Radioptics, Inc. v. United States*, 223 Ct. Cl. 594, 609 (1980); *see also Martin v. United States*, 102 Fed. Cl. 779, 785 (2012) (quoting

---

jurisdiction due to the expiration of the six-year statute of limitations. *See* 28 U.S.C. § 2501.

*Radioptics*). Otherwise, contracts could be created through unilateral declarations without any evidence of agreement or consideration. No special circumstances or relationship under which silence could be construed as consent has been alleged by Ms. Oyer, and she rests instead on a general "duty and responsibility to answer to the people" that purportedly falls on federal officials. Pl.s Resp. at 5. This is insufficient under *Radioptics*, 223 Cl. Ct. at 609.

As the Federal Circuit has long held, an implied-in-fact contract requires the establishment of several elements: (1) "mutuality of intent to contract"; (2) "consideration"; (3) "lack of ambiguity in offer and acceptance"; and that (4) "the Government representative 'whose conduct is relied upon [had] actual authority to bind the government in contract.'" *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (quoting *Juda v. United States*, 6 Ct. Cl. 441, 452 (1984)). *See also Turner v. United States*, No. 13-248C, 2014 WL 814870, at *4 (Fed. Cl. Feb. 12, 2014). Plaintiff does not allege facts regarding *any* of these elements. Her claim must therefore be dismissed under RCFC 12(b)(6).

Plaintiff's "International Commercial Claim" purportedly arises under admiralty law, due apparently to Ms. Oyer's peculiar belief that her name rendered in all capitals refers to a vessel. *See* Am. Compl. at 3, 5, 9. The document and her complaint cites the statute conferring admiralty jurisdiction upon the district courts, 28 U.S.C. § 1333; a statute concerning forfeitures under admiralty law, 28 U.S.C. § 2461; and a statute making property taken under revenue laws not "repleviable," 28 U.S.C. § 2463. Am. Compl. at 1; Compl. at 23. While this claim of Ms. Oyer's has nothing to do with admiralty law, neither does our court. *See Sw. Marine of S.F. v. United States*, 896 F.2d 532, 534–35 (Fed. Cir. 1990); *Johnson v. United States*, 79 Fed. Cl. 769, 775 (2007). Thus, to the extent she is attempting to raise admiralty claims, this would be beyond our subject-matter jurisdiction.[5]

### 2. *Equitable Relief*

Plaintiff's claim concerning the government's alleged misuse of her name is similarly premised on arguments advanced by the "sovereign citizen movement" --- namely, that the federal government has imposed its laws on her without her consent and that the issuance of her birth certificate resulted in financial transactions involving the U.S. Department of the Treasury, the U.S. Department of Commerce and the IRS. Am. Compl. at 7–10. *See also Gravatt*, 100 Fed. Cl. at 283. Such bizarre allegations have been found frivolous by our court. *Mitchell v. United States*, 136 Fed. Cl. 286, 289 (2018) (such "claims are frivolous and cannot

---

[5] The same is true for tort claims and claims of criminal law violations. *See* 28 U.S.C. § 1491(a)(1) (jurisdiction limited to claims "not sounding in tort"); *Stanwyck v. United States*, 127 Fed. Cl. 308, 314–15 (2016) (explaining lack of jurisdiction over criminal law violations).

serve as the basis for this Court's assertion of jurisdiction"); *see also Gravatt* 100 Fed. Cl. at 286–89; *Bell v. Hood*, 327 U.S. 678, 682–83 (1946) (noting that a federal court may dismiss a case for want of jurisdiction when the "claim is wholly insubstantial and frivolous."). This claim must therefore be dismissed as frivolous, under RCFC 12(b)(1), for failing to come within the court's subject-matter jurisdiction.

In connection with the government's alleged misuse of her name (when rendered in all capital letters), it appears that Ms. Oyer wants declaratory and injunctive relief from our court. Pl.'s Resp. at 7. Plaintiff asks the Court to "order the immediate cease of the use of [her] name, [her] property, and all derivations thereof." *Id.* As injunctive and declaratory relief are equitable forms of non-monetary relief, our Court generally lacks jurisdiction to grant such remedies unless they are tied to matters relating to a money-mandating source of law. *See Nat'l Air Traffic Controllers Assoc. v. United States*, 160 F.3d 714, 716 (Fed Cir. 1998) (noting that jurisdiction must come directly from a money-mandating law, and "[i]t is not enough that the court's decision may affect the disposition of a monetary claim pending elsewhere, or that the court's decision will ultimately enable the plaintiff to receive money from the government."); *see also Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66, 73 (1990) ("Declaratory relief is generally unavailable when the underlying controversy involves federal taxes."). As Ms. Oyer has not identified such a predicate, the equitable relief she requests is not within this court's subject-matter jurisdiction.

### 3. Miscellaneous Claims

Plaintiff also asserts a variety of other claims, ranging from an assertion that this court has jurisdiction under the First Amendment, a claim that her Sixth Amendment right to face her accuser was violated, and an assertion of jurisdiction under the Civil Rights Act. For the reasons discussed below, our court has not been empowered to entertain any of these claims.

Plaintiff raises two constitutional arguments. As is frequently the case when non-lawyers represent themselves in proceedings brought in our court, Ms. Oyer misunderstands the jurisdiction that Congress has given us. Our court has not been empowered to opine on every matter involving an alleged violation of a constitutional provision. Under the Tucker Act, 28 U.S.C. § 1491(a)(1), our jurisdiction is restricted to claims for money damages, and requires "the identification of a money-mandating law which was allegedly violated by the federal government." *Stanwyck v. United States*, 127 Fed. Cl. 308, 312 (2016) (citing *United States v. Mitchell*, 463 U.S. 206, 216–17.) For jurisdiction to rest on the transgression of a constitutional provision, that provision must mandate that money be paid to particular individuals if violated. *See Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) ("To be cognizable under the Tucker Act, the claim must be for money damages against the United States, and the substantive law

must be money-mandating."); *see also Eastport S.S. Corp.*, 178 Ct. Cl. 599, 605 (1967) (explaining that our predecessor did not have jurisdiction over "every claim involving or invoking the Constitution").

Plaintiff asserts that our court has jurisdiction under the First Amendment, which guarantees her right to petition the courts to redress allegedly-suffered grievances. Am. Compl. at 1–2. But the First Amendment is not money-mandating, *Connolly*, 716 F.2d at 887, and thus this argument fails to state a claim within our subject-matter jurisdiction. Plaintiff's Sixth Amendment argument fails for the same reason---namely, that the provision is not money-mandating. *Dupre v. United States*, 229 Ct. Cl. 706, 706 (1981); *Hernandez v. United States*, 93 Fed. Cl. 193, 198 (2010); *Darling v. United States*, No. 18-848C, 2018 WL 6322138, at *6 (Fed. Cl. Nov. 30, 2018).

The court also lacks subject-matter jurisdiction over plaintiff's Civil Rights Act claims, which she bases on 42 U.S.C. § 1983. *See Hover v. United States*, 113 Fed. Cl. 295, 296 (2013) (citing *Blassingame v. United States*, 33 Fed. Cl. 504, 505 (1995) ("Section 1983 is not a jurisdiction-granting statute. District courts are given jurisdiction to hear claims for damages for violation of that provision. . . . Such an action cannot be sustained here, however, because this court has not been given an equivalent jurisdiction.")). It is not clear what plaintiff is referring to when she invokes the Civil Rights Act, but it is well-established that this statute cannot support jurisdiction in our court. *Clemmons v. United States*, 283 Fed. App'x 786, 787 (Fed. Cir. 2008); *see also Bowles v. United States*, No. 14-1241C, 2015 WL 4710258, at *3 (Fed. Cl. July 31, 2015) (explaining that Section 1983 does not apply to the actions of the federal government).

## III. CONCLUSION

Plaintiff has not alleged matters coming within our court's subject-matter jurisdiction. Nor do her allegations concerning an implied-in-fact contract state a claim for relief that can be heard by this court. For the reasons stated above, the government's motion to dismiss this case is **GRANTED**. The Clerk shall close the case.

IT IS SO ORDERED.

_____
VICTOR J. WOLSKI
Senior Judge